## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 24-CR-20110-GAYLES/GOODMAN

UNITED STATES OF AMERICA,

      Plaintiff,

v.

BAYRON BENNETT, *et al.*,

      Defendants.

_____/

### ORDER GRANTING INTERVENOR'S MOTION
### FOR ACCESS TO AUDIO RECORDING

The McClatchy Company, LLC ("McClatchy"), the publisher of The Miami Herald (the "Herald"), filed a Motion for Limited Intervention and for Access to Audio Recording. [ECF No. 75]. The Undersigned already entered an Order [ECF No. 76] granting part of the motion and permitting McClatchy to intervene. The motion concerns a request for access to the Digital Audio Recording (the "DAR") of an August 9, 2024 pretrial detention hearing held before the Undersigned. During that hearing, the United States played recorded telephone calls involving Defendant Fausto Villar ("Villar"). The Undersigned relied on a recorded telephone call to support my ruling that Villar should be detained pending trial. McClatchy would like a copy of the recording, which my Courtroom Deputy confirmed did, in fact, pick up the statements played in open Court

from the recorded telephone calls.

United States District Judge Darrin P. Gayles referred [ECF No. 77] the motion to me. For the reasons outlined below, the Undersigned **grants** the motion and provides instructions on how McClatchy (or its Herald reporter, Jay Weaver, who made the initial, informal request before a formal motion was filed) can arrange to obtain a copy of the DAR recording of the pretrial detention hearing.

The United States, whose prosecutor played the recording from her laptop computer during the open hearing, filed a Court-ordered response [ECF No. 78], advising that it does not oppose McClatchy's position that it should be able to obtain a copy of the DAR recording. In doing so, the United States noted that the motion does not request that the government turn over any evidence that is subject to a Court-issued Protective Order. The United States further explained that "the First Amendment and the supporting case law allow for [McClatchy] to obtain a copy of the DAR recording of the public court proceeding where Villar was ordered detained." [ECF No. 78, p. 3].

The Undersigned agrees, and I also note that no Defendants filed a written objection to the motion for access to the DAR.

Given that the recording was played in open court, and regardless of whether it was technically introduced into evidence as a formal exhibit, the common law and the First Amendment should generate a right of those interested to inspect and copy the recording. *See United States v. Saunders*, 611 F. Supp. 45, 47 (S.D. Fla 1985) (collecting

decisions);[1] *see also United States v. Miller*, 579 F. Supp. 862, 865 (S.D. Fla. 1984) ("This Court and numerous other federal courts have granted motions similar to those made here for the inspection and copying of video and/or audio tapes which have been played in open court.") (collecting decisions).

The *Miller* Court provided the logical analysis of why there is a right of access to a recording played in open Court before members of the lay public:

> Once the evidence has become known to the members of the public including representatives of the press, through their attendance at a public session of court, it would take the most extraordinary circumstances to justify restrictions on the opportunity of those not physically in attendance to see and hear the evidence when it is in a form which readily permits sight and sound reproduction.

579 F. Supp. at 864–65 (quoting *In re: Application of Nat'l Broad. Co. United States v. Myers*, 635 F.2d 945, 952 (2d Cir. 1980)).

To be sure, the Undersigned acknowledges that the cases cited above concern recordings which were actually admitted into evidence, while the audio recording here was merely *played* in open Court (and recorded by the DAR) as part of a proffer (but was not admitted into evidence).

---

[1]     The *Saunders* Court also explained that "the courts in this district as well as other federal courts have repeatedly recognized that once a tape has been admitted into evidence and played in open court, the common law and the first amendment establish the right of those interested to inspect and copy the tape." 611 F. Supp. at 48. It also noted that "[t]he right to inspect and copy obtains even when the press and the public already have the information pertaining to the evidence." *Id.*

Although there does not appear to be any decisions within the Eleventh Circuit addressing this specific scenario, the Second Circuit considered the precise issue and held that the recordings **are** subject to the press's and public's right of access to judicial proceedings and records. *See United States v. Graham*, 257 F.3d 143, 151 (2d Cir. 2001) ("On appeal, the defendants contend that, because the tapes played at the pretrial detention hearing were not entered into evidence, they are not 'judicial records.' We disagree."); *id.* at 152 ("Thus, while the defendants are correct that the words 'admitted into evidence' were not used at the hearing, the distinction appears to us to be at most a semantic one, given the presentation of the tapes at the hearing and the district court's reliance on them in making its decision."); *id.* ("The First, Third, and Seventh Circuits[2] have all similarly

---

[2]    As the Second Circuit explained in *Graham*, "the policy behind the common law presumption of access is that what transpires in the courtroom is public property." 257 F. 3d at 152 (quoting *Smith v. United States Dist. Ct.*, 257 F.3d 143, 153 (7th Cir. 2001)). The *Graham* Court's rationale continued:

> In effect, the common law right functions to extend the right of the public to attend court proceedings to include the inspection of evidence presented at those proceedings. Thus, **just as a member of the public sitting in the courtroom might observe** the presentation of evidence as to which an objection is made and sustained as well as evidence which is admitted, it makes sense that the definition of a "judicial document" would **extend to any material presented in a public session of court** "relevant to the performance of the judicial function and useful in the judicial process" whether or not it was formally admitted." [*United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995)].

*Id.* (emphasis added).

4

held that the common law right applies not only to items in evidence, but rather more generally to materials on which a court relied in determining the litigants' substantive rights, which may include transcripts of proceedings and everything in the record, including items not admitted into evidence.") (footnote added; internal citations, quotation marks, and brackets omitted) (collecting decisions).

The recorded telephone calls at issue here were played in a packed, open courtroom. All in the courtroom heard (or could have heard, if they were listening) those recorded conversations. The mere fact that Mr. Weaver was not also in Court that day should not deprive him (or any other member of the public) from obtaining access to evidence played in Court when the presiding judge expressly relied on those recordings as a basis for an important ruling granting the United States' request for pretrial detention.

So the Undersigned **grants** the motion.

Turning now to logistics, McClatchy (or Mr. Weaver) may contact Randy Tobie, the Clerk's Office Records Management Supervisor (305-523-5213) to make arrangements to pay for the copy of the DAR and to pick it up.

**DONE AND ORDERED** in Chambers, at Miami, Florida, on October 1, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies furnished to</u>:**

The Honorable Darrin P. Gayles

All Counsel of Record