**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:24-CR-20110-DPG-6

UNITED STATES OF AMERICA,

Plaintiff,

v.

AVERY BIVINS

Defendant.

**DEFENDANT AVERY BIVINS'**
**MOTION FOR DOWNWARD DEPARTURE**

COMES NOW, by and through undersigned counsel, on behalf of the Defendant, AVERY BIVINS, and hereby moves for a downward departure pursuant to 18 U.S.C. § 3553(a).

## BACKGROUND

The Defendant, Avery Bivins ("Mr. Bivins"), was charged and entered a plea of guilty to counts one, fourteen, and sixteen of the Superseding Indictment charging him with murder for hire in violation of 18 U.S.C. § 1958, stalking in violation of 18 U.S.C. § 2261A, and brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii), respectfully.

## ARGUMENT

Section 4A1.2 of the U.S. Sentencing Guidelines defines what counts as a "prior sentence" when calculating a defendant's criminal history. By its plain terms, a "prior sentence" requires an "adjudication of guilt." The guideline further clarifies that diversionary dispositions without an adjudication of guilt are not counted. This is important when the prior record involves a youthful offender adjudication, deferred adjudication, or withheld adjudication, which many states classify differently from a felony conviction in adult court.

The commentary to § 4A1.2 also emphasizes fairness and proportionality: sometimes treating multiple related youthful offenses as separate "substantially overrepresents" a defendant's criminal history. See § 4A1.2, App. Note 3. Thus, the Guidelines themselves recognize that youthful mistakes should not automatically brand someone a "career offender."

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court made the Guidelines advisory, not mandatory. This fundamentally changed how § 4A1.2 applies in cases involving youthful offenders. Before *Booker*, a court was bound to count qualifying prior sentences exactly as the Guidelines dictated, even if they were based on youthful adjudications that inflated a defendant's criminal history. After *Booker*, sentencing judges may vary from the guideline calculation when they conclude the resulting range "substantially overrepresents the seriousness of

the defendant's criminal history or the likelihood of recidivism." See § 4A1.3. Thus, when a defendant's "priors" consist of youthful adjudications or withheld adjudications, *Booker* gives the judge discretion to reduce the weight of those sentences in the criminal-history calculation, recognizing that youthful mistakes should not carry the same force as adult recidivism.

*Kimbrough v. United States*, 552 U.S. 85 (2007) reaffirmed judicial discretion to vary from the Guidelines on policy grounds. The Court held that district courts are not bound by the Sentencing Commission's policy judgments, such as the 100:1 crack-to-powder ratio, when those judgments produce unjust or irrational outcomes. Applied to § 4A1.2, *Kimbrough* means a judge may decline to give full effect to youthful offender adjudications or withheld adjudications when they overstate a defendant's criminality. If the Guidelines' treatment of youthful offenses as "prior sentences" would effectively transform a young defendant into a "career offender," the sentencing judge has authority to reject that outcome as inconsistent with § 3553(a)'s requirement to impose a sentence "sufficient, but not greater than necessary."

Here, Mr. Bivins should not be classified as a career offender under U.S.S.G. § 4B1.1 because such a designation contradicts both the discretion afforded to sentencing courts by the Supreme Court and the underlying policy concerns about youthful offenders. In *Booker*, the Court held that the Guidelines

are advisory, not mandatory. 543 U.S. 220. This means a district court retains authority to reject rigid applications of § 4B1.1 when they lead to outcomes that "substantially overrepresent[] the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." § 4A1.3. Likewise, in *Kimbrough v. United States*, the Court reaffirmed that judges may vary from the Guidelines on policy grounds, particularly where the Commission's judgments fail to align with § 3553(a)'s command to impose a sentence "sufficient, but not greater than necessary." 552 U.S. 85. Together, *Booker* and *Kimbrough* make clear that a sentencing judge is not bound to apply career offender status to a defendant who only just turned eighteen, especially when that designation exaggerates culpability and undermines rehabilitation.

This case highlights why judicial discretion is necessary. The defendant had barely crossed the threshold into adulthood at the time of the offense. Applying career offender status to someone who turned eighteen only recently equates his conduct with that of entrenched, repeat offenders, despite the absence of the mature decision-making and prolonged criminal pattern that § 4B1.1 was designed to capture.

The referenced and attached Vanderbilt Law Review[1] highlights that once

[1] Andrew Tunnard, *Not-So-Sweet Sixteen: When Minor Convictions Have Major Consequences Under Career Offender Guidelines*, 66 Vanderbilt Law Review 1309 (2019), https://scholarship.law.vanderbilt.edu/vlr/vol66/iss4/5.

youthful defendants are transferred into the adult system, they become exposed to the full weight of the federal sentencing regime, including the Career Offender Guidelines. As the Note explains, "these harsh penalties—especially the Career Offender Guidelines—are supported less by rehabilitation or developmental differences than by retribution and deterrence." 66 Vand. L. Rev. at 1317. This framing undercuts the rationale for applying career-offender status to an eighteen-year-old who has barely crossed the threshold into adulthood. Rather than reflecting developmental science or rehabilitative goals, the career-offender enhancement reflects Congress's explicit directive to punish entrenched recidivists "at or near the maximum term authorized." *Id.* at 1317–18, citing 28 U.S.C. § 994(h). That purpose is mismatched when the defendant's only qualifying characteristic is that he turned eighteen.

The Vanderbilt Note also underscores how the Commission went beyond Congress's directive, broadening the range of predicate offenses included and producing some of "the most severe sentences" in the Guidelines. *Id.* at 1318. This overreach disproportionately affects young defendants, who may suddenly qualify as "career offenders" based on conduct straddling the juvenile/adult line. Importantly, § 4A1.2(d) specifically addresses offenses committed prior to age eighteen, distinguishing between adult convictions with imprisonment over one year and juvenile dispositions resulting in confinement. By focusing on the

sentence received rather than the offense label, § 4A1.2(d) reflects an understanding that youthful adjudications are different and should not automatically count toward career-offender status. As the Vanderbilt Note observes, this approach aims to "avoid sentencing discrepancies" across jurisdictions by limiting which pre-18 convictions can count. *Id*. at 1319–20.

Applied here, the Vanderbilt Note supports the view that enhancing a barely-eighteen-year-old defendant as a "career offender" distorts the Guidelines' intent. The Career Offender provisions were designed for hardened, repeat adult offenders "likely beyond the reach of rehabilitation", not defendants just emerging from adolescence, whose brain immaturity, impulsivity, and potential for reform remain well-documented. *Id*. at 1318. The article's policy critique thus reinforces why the Court, consistent with *Booker* and *Kimbrough*, should exercise its discretion to reject career-offender classification in this case.

When considered the Defense believes this warrants in favor of a downward departure from the guidelines.

## CONCLUSION

WHEREFORE, the Defendant, AVERY BIVINS, by and through his undersigned counsel prays this Honorable Court will grant the requested relief and/or any other relief deemed necessary.

Respectfully submitted,

HUMBERTO R. DOMINGUEZ, P.A.

By: /s/ Humberto R. Dominguez
Humberto R. Dominguez
Florida Bar No.: 837903
9100 S. Dadeland Boulevard
Suite 1500
Miami, Florida 33156
Telephone: (305) 373-6400
E-Mail: Bert@hdominguezlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on September 15, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will then send notice of electronic filing to all counsel of record.

Respectfully submitted,

HUMBERTO R. DOMINGUEZ, P.A.

By: /s/ Humberto R. Dominguez
Humberto R. Dominguez
Florida Bar No.: 837903
9100 South Dadeland Boulevard
Suite 1500
Miami, Florida 33156
Telephone: (305) 373-6400
E-Mail: Bert@hdominguezlaw.com