**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO: 1:24-cr-20110-DPG-1**

UNITED STATES OF AMERICA,

v.

Bayron Bennett.
_________________________________/

**DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

Defendant Bayron Bennett, through undersigned counsel, pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure, respectfully submits the following objections to the Presentence Investigation Report ("PSR") (ECF No. 208).

Mr. Bennett accepts full responsibility for his role in this conspiracy and does not seek to minimize his guilt. These objections address factual inaccuracies and guideline calculations that do not reflect his actual conduct as established by the Stipulated Factual Proffer (ECF No. 166).

## I

## THE THREE-LEVEL AGGRAVATING ROLE ENHANCEMENT UNDER U.S.S.G. §3B1.1(b) IS UNSUPPORTED BY THE STIPULATED FACTS

The PSR recommends a three-level enhancement because Mr. Bennett allegedly "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants." PSR ¶96. This enhancement is inconsistent with the Stipulated Factual Proffer (ECF No. 166) and the PSR's own internal characterizations.

### A
### The Proffer Describes Bennett as a "Facilitator," Not a Manager or Supervisor

The government's own language matters. The Stipulated Factual Proffer states that "Law Enforcement identified BENNETT as the possible facilitator of DULFO and the others to commit

crimes against Victim 1 and Victim 2 on behalf of Pino." ECF No. 166 at 6 (emphasis added). A "facilitator" who acts "on behalf of" another is not a manager. He is an intermediary.

The proffer further states that "Pino hired Bayron BENNETT to recruit a group of people to commit arsons on vehicles." ECF No. 166 at 1. Bennett recruited—he did not manage, supervise, plan, or direct. These are distinct legal concepts under §3B1.1.

**B**
**Bennett Recruited Only One Person; Others Recruited Their Own Participants.**

The PSR's own Role Assessment reveals the recruitment chain:

- Bennett recruited Dulfo. PSR ¶74.
- "Dulfo also recruited Jerren Keith Howard." PSR ¶75.
- "Howard... recruited Edner Etienne." PSR ¶76.

Bennett recruited one person. Dulfo and Howard independently recruited the remaining participants. A defendant who recruits a single individual—who then goes on to recruit others without the defendant's direction—is not a "manager or supervisor" of those downstream participants. See U.S.S.G. §3B1.1 cmt. n.2 ("To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants.") (emphasis added).

Even assuming arguendo Bennett qualified as a manager, the three-level enhancement under §3B1.1(b) does not apply because his criminal activity involved only four participants: Bennett, Dulfo, Howard, and Etienne. The indictment (Doc. 24) charges no others. The Second Crew participants (Villar, Bivins, Johnson, Green, and Barnard) were charged in a separate superseding indictment and operated through an independent chain with which Bennett had no involvement. At most, §3B1.1(c)'s two-level enhancement could apply.

**C**
**The PSR's Own Language Contradicts the Enhancement**

At paragraph 40, the PSR itself refers to the "Howard Group" when describing law enforcement's understanding of the participants: "As a result of its investigation, law enforcement learned that Pino contracted the Howard Group to conduct the arsons and hit and run against Victim 1." PSR ¶40 (emphasis added).

If Probation characterizes this as the "Howard Group," Bennett cannot simultaneously be its manager or supervisor. The PSR's internal inconsistency demonstrates the enhancement is unsupportable.

**D**
**Bennett Lacked the Hallmarks of Managerial Authority**

The Guidelines Commentary identifies factors distinguishing managers from mere participants: "the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. §3B1.1 cmt. n.4.

Applying these factors:

- **Decision-making authority:** Pino made the decisions. The PSR acknowledges "Pino directed Bennett" (PSR ¶14), and "insisted that Bennett deal exclusively with Pino." *Id*. Bennett took direction; he did not give it. Also important to note that paragraph 14 is not factually accurate as Bennet did not control, nor direct, nor plan, what Dulfo did or how he managed his crew. To characterize Dulfo, Etienne, and Howard as "Bennett's crew" implies

that Bennett supervised them, which is not accurate. Bennett dealt with Dulfo, Dulfo recruited his own people downstream.

- **Larger share of profits:** Bennett was a pass-through for Pino's money, paying Dulfo "$3,000 with monies obtained from Pino." PSR ¶74. No evidence suggests Bennett retained a larger share.
- **Planning the offense:** Pino planned. Bennett relayed. The proffer states "Pino's requests escalated over time... BENNETT relayed this information to DULFO." See Factual Proffer, ECF No. 166 at 7-8.
- **Control over others:** None. Dulfo recruited Howard; Howard recruited Etienne. Neither consulted Bennett. Bennett was not present for any of the criminal acts nor did Bennett instruct Dulfo and/or his crew how said criminal acts should have been performed.

## E
## The Enhancement Creates Unwarranted Disparity

The PSR recommends no role enhancement for Dulfo, Howard, or Etienne. PSR ¶¶75-77. Yet Dulfo recruited two people (Howard and, through Howard, Etienne) and personally committed the arsons and hit-and-run (Dulfo also planned logistically how these would be done). If Dulfo—who recruited more participants and physically executed the crimes—warrants no enhancement, then Bennett—who recruited one person and committed no violent acts—cannot warrant a three-level enhancement. Applying the enhancement to Bennett alone creates precisely the unwarranted sentencing disparity that 18 U.S.C. §3553(a)(6) prohibits.

**SIDE BY SIDE COMPARISON:**

| **Factor** | **Bennett** | **Dulfo** |
|---|---|---|
| Prior criminal history | NONE | Multiple felonies |
| Prior felony convictions | 0 | 4+ (Forgery, Uttering, Burglary, Grand Theft, Burglary Tools) |
| Probation revocations | 0 | 2 (2002 and 2016) |
| People directly recruited | 1 (Dulfo) | 2 (Howard → Etienne) |
| Present at crimes | NO | YES - personally committed arsons and hit-and-run |
| Executed violent acts | NO | YES |
| §3B1.1 Role Enhancement | 3 LEVELS | NONE |

The disparity is particularly stark given the defendants' respective criminal histories. Bennett has no prior criminal record. Dulfo, by contrast, has multiple prior felony convictions—including forgery, uttering a forged instrument, burglary, and grand theft—and two probation revocations. Yet Dulfo receives no role enhancement while Bennett receives three levels.

**F**
**Requested Relief**

The Court should reject the three-level enhancement under §3B1.1(b). If any role adjustment applies, Bennett qualifies for a mitigating role reduction under §3B1.2 as an intermediary who acted at another's direction.

**II**

**THE PSR OVERSTATES BENNETT'S ACTUAL CONDUCT WITHIN THE CONSPIRACY**

Mr. Bennett accepts responsibility for his participation in this conspiracy. However, the PSR attributes conduct to Bennett that exceeds what he actually did. The PSR states that Bennett's crew "made numerous attempts to intimidate and kill Victim 1 through acts such as arsons, a staged

home invasion robbery and poisoning with cyanide, arsenic, and fentanyl." PSR ¶¶13-14, 73. This materially overstates Bennett's actual conduct.

**A**
**Bennett's Actual Conduct: Recruiting for Arsons and Hit-and-Run**

The Stipulated Factual Proffer defines Bennett's actual conduct: "Pino hired Bayron BENNETT to recruit a group of people to commit arsons on vehicles owned by Victim 1's sister... as well as using a vehicle to ram Victim 1's vehicle to prevent her from attending a divorce court proceeding." ECF No. 166 at 1.

The PSR itself confirms this at paragraph 34: "During the questioning, Bennett admitted that Pino had paid him to seek out individuals to commit the arsons and a hit-and-run against Victim 1." PSR ¶34.

That is the scope of Bennett's actual conduct: recruiting Dulfo for arsons and the hit-and-run. He was not present for any of these acts. He did not plan the operational details. He did not personally execute any criminal act.

**B**
**The Staged Home Invasion Was Never Attempted**

The proffer explains that Pino's "requests escalated over time... ultimately culminating in Pino expressing his desire to kill Victim 1 through means that included a staged home invasion robbery" and that "BENNETT relayed this information to DULFO." ECF No. 166 at 7-8 (emphasis added).

Bennett relayed Pino's request. That communication is part of the conspiracy to which Bennett has pled guilty. However, the staged home invasion was never attempted, never planned in detail, and never executed. The PSR should not characterize Bennett as having participated in a "staged home invasion robbery" when no such act occurred.

**C**
**Bennett Did Not Participate in Poisoning with Cyanide or Arsenic**

No evidence in the record establishes that Bennett procured cyanide or arsenic, participated in any poisoning attempt with these substances, or directed anyone to do so. The PSR's attribution of "poisoning with cyanide, arsenic" to Bennett's conduct is unsupported.

**D**
**The Fentanyl Transaction Predates the Conspiracy**

The PSR at ¶¶10, 13, 14, and 73 references "poisoning with... fentanyl" as conduct attributable to Bennett's group. Bennett acknowledges he provided fentanyl to Pino. However, this transaction occurred before July 2022—before the conspiracy alleged in this case began. At the time of the fentanyl transaction:

- Bennett was employed as a crew member on Pino's yacht
- Bennett had no knowledge of Pino's divorce proceedings
- Bennett had no knowledge of any scheme against Victim 1
- Pino represented the fentanyl was for personal use

The conspiracy charged in this case is alleged to have begun "[f]rom in or around June 2022." PSR ¶9. The fentanyl transaction predates this period and was unconnected to any scheme against Victim 1 at the time it occurred.

Co-defendant Dulfo's PSI objections confirm: "Mr. Dulfo was never present for, nor did he participate in, any conversation in which Mr. Pino or Mr. Bennett solicited fentanyl or discussed payment for any murder." ECF No. 211 at 2.

**E**
**Requested Relief**

The PSR should accurately reflect Bennett's actual conduct within the conspiracy:

1. Strike references to Bennett participating in poisoning with cyanide or arsenic (which never occurred)
2. Clarify that the staged home invasion was discussed but never attempted or executed
3. Note that the fentanyl transaction predated the conspiracy and Bennett's knowledge of Pino's intent
4. Reflect that Bennett's actual conduct was limited to recruiting Dulfo and relaying Pino's requests

## III

## THE PSR'S CHARACTERIZATION OF BENNETT AS HAVING "COORDINATED" THE FIRST CREW OVERSTATES HIS ROLE

The PSR repeatedly states that "The first crew was coordinated by Bennett." PSR ¶¶13, 14, 73. The Stipulated Factual Proffer uses different language: Pino hired Bennett "to recruit a group of people." ECF No. 166 at 1.

A coordinator exercises ongoing control and discretion over activities. Bennett recruited Dulfo and relayed Pino's requests. He did not plan operational details, was not present for criminal acts, and did not direct how they were executed. The proffer establishes that "Pino directed Bennett and his crew" (PSR ¶14), and Pino "insisted that Bennett deal exclusively with Pino." *Id.*

The PSR's reference to the "Howard Group" at paragraph 40 further demonstrates Bennett was not the coordinator of this activity.

The PSR should reflect the proffer's language: Bennett "recruited" Dulfo at Pino's direction.

## IV
## FACTUAL CORRECTIONS

The following factual matters require correction:

A. **Paragraph 124:** The address listed requires verification. Defense counsel will confer with the defendant's wife and provide the correct address.

B. **Paragraph 125**: The defendant's medical history should reflect that he underwent hernia surgery while in federal custody approximately one month prior to the date of this filing.

## CONCLUSION

Mr. Bennett accepts full responsibility for his role in this conspiracy. He does not seek to minimize his guilt. He asks only that the PSR accurately reflect his actual conduct.

For the foregoing reasons, Mr. Bennett respectfully requests that the Court:

1. Reject the three-level role enhancement under U.S.S.G. §3B1.1(b);
2. Correct the PSR to accurately reflect Bennett's actual conduct within the conspiracy: recruiting Dulfo and relaying Pino's requests;
3. Strike or clarify references to conduct Bennett did not actually perform (poisoning with cyanide/arsenic, executing a staged home invasion);
4. Note the temporal distinction regarding the fentanyl transaction;
5. Replace "coordinated" with "recruited" to reflect the proffer's language;
6. Correct the factual matters identified in Section IV.

If these objections are sustained, the Adjusted Offense Level would decrease from 35 to 32, resulting in a Total Offense Level of 29 after acceptance of responsibility—and a guideline range of 87 to 108 months rather than 121 to 151 months.

## CERTIFICATE OF CONFERRAL

I HEREBY CERTIFY that on 12/9/2025, I emailed my objections to AUSA Brian Dobbins, having sent him the instant objections for review prior to filing with the clerk of court.

Respectfully submitted,

/s/ Dennis Gonzalez Jr.
Dennis Gonzalez Jr., Esq.
Fla. Bar No.: 92407
Dennis Gonzalez Jr., P.A.
11401 SW 40 Street, Suite 250
Miami, FL 33165
Telephone: (305) 209-0384
Email: DG@786.Law

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court through CM/ECF on this **Monday, December 22, 2025**.

/s/ Dennis Gonzalez Jr.
Dennis Gonzalez Jr., Esq.