UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 24-CR-20110-GAYLES/GOODMAN

FILED BY ___ D.C.
SEP 10 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES OF AMERICA,

Plaintiff,

v.

Vernon Green,

Defendant.

______________________________/

MOTION TO DISMISS COUNT 16 OF THE SUPERSEDING INDICTMENT PURSUANT TO FEDERAL RULES OF CRIMINAL PROCEDURE 12(b)

COMES NOW the Movant, Vernon Green, Pro Se, respectfully submits the following "Motion to Dismiss Count 16 of the Superseding Indictment pursuant to Federal Rules of Criminal Procedure 12(b). This motion raises meritorious issues and should be considered, for atleast an evidentiary hearing on the matter.

## I. BACKGROUND

The Defendant assumes the Court's familiarity with the pertinent facts of the instant case.

## II. LEGAL STANDARD

A motion to dismiss an indictment is governed by Federal Rules of Criminal Procedure 12(b). A defendant may challenge an indictment on various grounds, including lack of jurisdiction. See United States v. Kaley, 677 F. 3d 1316, 1325(11th Cir. 2012). Specifically, under Fed. R. Crim. P. 12(b)(2), a Defendant may make "[a] motion that the court lacks jurisdiction... at any time while the case is pending."

A pretrial motion to dismiss generally may not resolve ques-

tions about the suffiency of the Government's evidence, and a court must assume that the allegations in the indictment are true. See United States v. Torkington, 812 F. 2d 1347, 1354(11th cir. 1987)("a court must assume that the allegations are true..."). But where a defendant moves to dismiss an indictment "solely upon an issue of law, not fact, "a court may resolve the legal dispute before trial. United States v. George, 223 F. Supp. 3d 159, 163 (S.D.N.Y. 2016).

The Defendant's motion raises a purely legal dispute as to whether the 18 U.S.C.§ 924(c) charged in count 16 has a valid predicate, which is a requisite as a matter of law. That is the gravamen of this motion.

Also, under Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652(1972), The Supreme Court held "in a pro se case, the court must view submissions by a more lenient standard than that accorded to formal pleadings drafted by lawyers."

The defendant has decided to proceed pro se after numerous [failed] attempts to have counsel litigate these issues. Counsel has proved to be inadequate and unreliable in the performance of his duties. Thus the defendant prays this court construes the instant motion liberally, because he is a layman of the law.

## III. ARGUMENT

The defendant reasonably believes that the §924(c) charged in count 16 does not have a valid predicate, therefore it is null and void. Murder For Hire(18 U.S.C. §1958) was never alleged as a predicate for count 16 so, unlike his codefendant Johnson, the defendant will not attack the validity of that count as a §924(c)

predicate. Such an argument would be frivolous.

This motion to dismiss will be solely in regards to the two statutes that are alleged to be the predicates for the §924(c) count; the uncharged Travel in Interstate or Foreign Commerce in Aid of Racketeering, in violation of 18 U.S.C. §1952(a)(2), and Federal Stalking, in violation of 18 U.S.C. §2261A(which was charged).

A. INTERSTATE AND FOREIGN TRAVEL OR TRANSPORTATION IN AID OF RACKETEERING ENTERPRISES IS NOT A VALID PREDICATE

Like his codefendant Johnson, Green is challenging the legitamacy of the uncharged §1952(a)(2) offense as a valid predicate under §924(c). But, unlike his codefendant Johnson, Green is not alleging that §1952(a)(2) must be charged in a seperate count. Rather, Green is arguing that it would be impossible for the government to prosecute him for that offense.

Green agrees with the Magistrate Judge who decided the issue that a conviction under §924(c) does not require that a defendant be convicted of, or even charged with, the predicate crime of violence or drug trafficking crime. See United States v. Frye, 402 F. 2d 1123, 1127(11th cir. 2005)(deciding issue as one of first impression in the Eleventh Circuit.).

But, there is a requisite. In Navarro v. United States, 679 F. App'x 973(11th cir. 2017), the court held that a [924(c)] conviction"requires only that the predicate crime be one that 'may' be prosecuted."(emphasis added). See also United States v. Kinchen, 2018 WL 11422081, *2(11th cir. 2018)(Section 924(c) conviction requires only that the predicate offense is 'one the [G]overnment could have prosecuted'...").

From the cases cited above, it is unequivocal that the prosecution can only utilize a §924(c) predicate that may be prosecuted. That renders §1952 inapplicable because it is factually impossible for the government to seek and obtain a conviction under the statute. 18 U.S.C. §1952(a)(2) states:

> (a)Whoever travels in interstate... commerce... with intent to (2) commit any crime of violence **to further an unlawful activity.**'"(Emphasis added).

In order for the government to prevail on a §1952 conviction, the government must prove beyond a reasonable doubt that the defendant intended to further an "unlawful activity." The element for unlawful activity is defined in §1952(b):

> "As used in this section (i)"unlawful activity 'means (1) any business enterprise involving gambling, liquor..., narcotics or controlled substances..., (2) extortion, bribery, arson..., or (3) any act indictable under subchapter II of chapter 53 of title 31..."

The defendant unequivocally did not aim to further any unlawful activity as is defined above, thus any attempt to prosecute him for a violation of §1952 would have been futile because of the lack of that element in the instant case.

Unlike the Stalking charge, the operative question here is not whether §1952 is a valid crime of violence predicate. Rather, the question is: can it serve as a valid predicate even if it was a crime-of-violence? The answer is clearly no, because the government could not have prosecuted the Defendant for that offense. See Navarro.

For the reason outlined in this prong, namely that the §1952(a)(2) offense is unprosecutable, §1952 can not serve as a proper predicate for the §924(c) charged in count 16.

B. POST-TAYLOR, THE COURT CAN NO LONGER USE THE REALISTIC PROBABILITY TEST TO JUSTIFY KEEPING SECTION §2261A AS A CRIME OF VIOLENCE PREDICATE UNDER §924(c)

In the Abarca Report and Recommendation, which this court adopted, Magistrate Judge Torres found that Section 2261A(2)(A) was a predicate crime of violence for a violation of §924(c) in counts that were structured similarly to count 16 on the instant superseding indictment. 2024 WL 1643174, at p. 15-22. The Abarca court used the Realistic Probability Test as the gravamen in its decision. id at p. 19("... we believe the realistic probability doctrine applies with equal force in Section 924(c)(3)'s crime of violence inquiry.").

The reason why the Abarca decision is relevant in this analysis is because Magistrate Judge Goodman referenced Abarca in regards to the stalking statute, in the Johnson Report and Recommendation. See [D.E. 113, p. 23]("Count 16 of the Superseding Indictment, Section 2261A(2)(A) is charged similarly as in the count from Abarca... Therefore, Defendant's second argument is unpersuasive and should be denied."). This court also adopted the Johnson Report and Recommendation. See [D.E. 114].

Because the legal reasoning of both Magistrates', as layed out in the Report and Recommendations, are aligned in regards to §2261A being a crime of violence, the defendant is going to specifically attack the realistic probability test. For the realistic probability analysis was, and still is [apparently], the gravamen of the Courts' crime of violence designation in regards to the Federal Stalking Statute.

The realistic probability test is a hurdle that has proved

to be almost-insurmountable within this circuit. Neither the categorical or Modified Categorical approach matters, nor hypotheticals, as long as the court is able to use the erroneous realistic probability test(RPT). See Abarca [at p. 18]("the Eleventh Circuit requires that we follow the Supreme Court's adoption of the realistic probability' doctrine, which prohibits the application of far-fetched hypotheticals")(Quotations in the original).

The Abarca Court goes on to cite a litany of cases to bolster the erroneous RPT analysis. See Moncrieffe v. Holder, 569 U.S. 184, 191(2013)(commenting that when employing the categorical approach under the INA the court's "focus on the minimum conduct criminalized by the statute is not an invitation to apply 'legal imagination' to the offense; there must be 'a realistic probability, not a theoretical possibility, that the state would apply its statute to conduct that falls outside the generic definition of a crime.") (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)); See United States v. Vail-Bailon, 868 F.3d 1293, 1305(11th Cir. 2017) ("In short, Vail-Bailon's florid exercise of legal imagination does not provide a persuasive basis upon which to conclude that Florida felony battery lacks the requirement of physical force necessary [to meet the violent force standard].")(emphasis added); see also United States v. Deshazior, 882 F.3d 1352, 1357(11th Cir. 2018) (noting that the defendant had "heed[ed] [their] warning" about not proferring unrealistic, theoretical hypotheticals to assert that Florida's sexual battery with a deadly weapon statute could be accomplished without the requisite physical force, attempted use of physical force, or threatened use of physical force).

The Abarca court goes on to state that "given the persuasive authority in contexts that the Eleventh Circuit has found to be anologous to Section 924(c)(3), we believe the realistic probability doctrine applies with equal force in Section 924(c)(3)'s crime of violence inquiry."-See Abarca [p. 19].

The cases cited were inapposite and erroneous. Montcrieffe v. Holder was in regards to a State statute, not a Federal one. The same is true for the Gonzales v. Duenas-Alvarez, United States v. Vail-Bailon, and United States v. Deshazior cases also. It should be noted that all of those cases are pre-Taylor. In United v. Taylor, 596 U.S. 845, (2022), the Supreme Court expressly rejected the use of the "Realistic Probability Test" in the analysis of Federal Crimes. See United States v. Elkins, 161 F.4th 899(5th Cir. 2025)("the 'realistic probability' test is appropriate only when assessing whether a state statute can serve as the predicate for a federal sentence enhancement. Here, we assess whether a federal statute can serve as the predicate offense, and the 'realistic probability test has no place in that analysis.)(quotation in original)at [App. LEXIS 12]; See also United States v.Green, 67 F. 4th 657,669(4th Cir. 2023)("In Taylor, the Supreme Court clarified that the realistic probability test is an inappropriate way to determine whether a predicate offense satisfies §924(c)'s elements clause.").

The fact that the Eleventh Ciruit, specifically the Southern District,is still using this inapplicable, and [now] unauthorized doctrine in reqards to the analysis of §924(c) is troubling. It is clear that post-Taylor the"realistic probability test has no place in [the Section 924(c)] analysis."Elkins, 161 F. 4th at 907.

Post Taylor, it is unequivocal that the "RPT" is only used for Federal Courts examining [past] State statutes, not current Federal statutes such as §2261A. The RPT requires courts to determine "would" the state apply its statute to conduct that falls outside the generic definition of a crime. But, the categorical approach merely requires a determination of whether it "could" be done. Just the mere fact that the State can prosecute an individual for such conduct is where the inquiry begins and ends. Just because judges within this district disagree with a defendant's usage of [so-called] "hypotheticals" or "legal imagination", doesn't give them the green light to misapply the law.

The Honorable Margaret M. Garnett, a district court Judge out of the Sourthern District of New York is an excellent example of a judge that is in complete disagreeance with the usage of the categorical approach. See United States v. Luigi Mangione, Case No. 25-CR-00176-MMG(S.D.N.Y. Jan. 30, 2026)("No one could seriously question that this is violent criminal conduct. And yet, over the course of the last two decades or so, the Supreme Court has embarked upon a legal journey, explained herein, that now requires lower courts to engage in an analysis totally divorced from the conduct at issue and centered on the hypothetically least serious conduct that the charged crime could possibly cover. This is typically shorthanded as the 'categorical' approach.")(quotation in original). id at page 2.

Even though Judge Garnett was unequivocally in disagreeance, the Judge opted to follow the law of the current legal landscape as is.("However, regardless of its own views, a district court is duty-bound to follow binding Supreme Court precedent. The analysis

contained in the balance of this Opinion may strike the average person-and indeed many lawyers and judges-as tortured and strange, and the result may seem contrary to our intuitions about the criminal law. But it represents the Court's committed effort to faithfully apply the dictates of the Supreme Court to the Charges in this case. The law must be the Court's only concern."). See Mangione at page 3.

An exercise in hypotheticals is useful or determinative only insofar as it produces an example illustrating that an offense could be completed without force-because such an example necessaarily shows that force must not be an element of the offense. Apart from that potential use of hypotheticals, the categorical approach must focus on a crime's definition, as expressed through its elements. And if the definition is missing the necessary component of force, the Court need not worry whether it is difficult to imagine the absence of force in a real-life case. That was the job of the residual clause, which is now long gone.

By adopting the Abarca Report and Recommendation, this court joined a handful of other district courts in other circuits in arguing that there is no conceivable "example of conduct that places the victim in resonable fear of death or serious bodily injury that does not involve the threatened, attempted, or actual use of force. See United States v. Bacon, No. CR 18-00075 (LPS), 2021 WL 5051364, at *13(D. Del. Nov. 1, 2021)(noting that the defendant had "not articulated any plausible scenario in which a victim could reasonably have such a fear without at least the threat of physical force"); United States v. Griffin, No. 17-CR-20639 (TGB) (MKM), 2022 WL 2021054, at *6(E.D. Mich. June 8, 2022)

("Ultimately, except for far-fetched hypotheticals involving the forbidden application of 'legal imagination,' the Court fails to see how an offender acting with the intent to kill, injure, or harrass, can 'engage in conduct that places a person in reasonable fear of death or serious injury,' and from which conduct death does indeed result, without the use of physical violence.")

This district time and again has adopted this approach and opted to go against [current] Supreme Court precedent. See United States v. Ali, No. 24-CR-20341, 2025 WL 2938420, at *4(S.D. Fla. Oct. 16, 2025)(dismissing "far-fetched hypotheticals" and holding that "it's impossible to conceptualize an instance where an individual engages in a 'course of conduct' that puts someone in 'reasonable fear of the death of or serious bodily injury' to himself or another without engaging in conduct that, at minimum, threatens the use of physical force to a person")(quoting United States v. Johnson, No. 24-CR-20110, 2025 WL 1520055, at *10(S.D. Fla. May 7, 2025), report and recommendation adopted, No. 24-20110-CR, 2025 WL 1517219 (S.D. Fla. May 28, 2025)).

None of the cited cases conduct the rigorous analysis now required by Taylor, with its focus on elements and its express rejection of efforts to backdoor the now-invalidated residual clause of Section 924(c) by musing about the way a crime is generally committed, 596 U.S. at 857-58; nor do any of them wrestle with the requirement imposed by Borden v. United States, 593 U.S. 420, 432-34(2021), that the element or actus reus that satisfies the force requirement must be commited with a mental state greater than recklessness. But even putting aside for the moment whether such a holistic analysis that rejects conduct deemed too "far-

fetched" is even permissable as an analytical frame after Taylor, the Defendant disagrees that it is impossible to imagine how a defendant could commit the charged crimes without the legally required use of force. The key point is that the §2261A statute does not require as an element that the defendant have the subjective intent (or even knowledge) to place the victim in fear. Consequently, to cause reasonable fear with conduct that nonetheless is undertaken with a specific intent to harass, all it takes is a difference in perspectives between the offender and the victim. And to cause a death, all that is required is an unintended sequence of events that makes an already bad situation take an irretrievable turn for the worse.-Mangione at *34.

In sum, a defendant could complete the charged Travel Stalking and Cyberstalking offenses through only reckless conduct that falls short of the legal definition of "use of force against the person or property of another. " A hypothetical case proves the point. Suppose a man travels across state lines with the intent to harass an ex-lover that he believed had been unfaithful to him during their relationship. Nothing about the man's history with the victim suggests a propensity for violence, and he harbors no intention of causing fear. Rather, he seeks only to "turn the tables" and humiliate the victim. He fantasizes about achieving a sense of closure by ultimately confronting the victim and relishing the sight of her shame and embarassment, or, hopefully, her guilt and remorse for her past conduct. The man starts with indirect tactics. He travels from the neighboring state where he now lives to secretly post signs at the victim's workplace reading "[victim] is a slut and a cheater" and also sends an anonymous mass email to all of

her co-workers with the same message. He pays a sketchy friend-of-a-friend to follow the victim, with instructions to occasionally shout "Cheater!" or to talk loudly with other patrons about her past infidelity when she is out with friends at a bar; and to text him updates on the victim's whereabouts and mental state so that he can best plan his own in-person confrontation. So far, so good-the defendant has traveled and used the internet with the intent to harass, and has engaged in more than one act in the course of doing so.

The man is confident in his own mind that his planned course of conduct does not go "too far" and veer into any kind of threat or violence. But what if the victim sees things differently? In all kinds of circumstances, the man may unknowingly place the victim in reasonable fear by consciously disregarding a substantial lik-elike hood that his actions would produce that result. He may, for instance, wrongly assume the victim will readily attribute the anonymous messages to him, ignoring that his anonymous accusations of cheating could conjure fears of potential violence from other actors. Perhaps the man knows but disregards the fact that another intimate partner, also suspicious of infidelity, had recently threatened the victim with violence, or that an unstable coworker had promised physical retribution after accusing the victim of underhanded tactics to win a coveted promotion. Or he might disc-redit or ignore warnings from his friend that his shady henchman has a history of erratic behavior, leading to a rougher treatment of the victim than the man intended.

Or maybe the man simply lacks awareness and good sense, as stalkers generally do. Based on an amicable history with the victim,

he may assume the victim has no reason to perceive his actions as threatening. But he may fail to recognize that his conduct departs so wildly from accepted norms that any existing benefit of the doubt would almost certainly give way to an updated presumption that he had gone off the deep end. He might, for example, trespass into private places to leave notes or post signs at the homes of the victim's friends and family. The man's only intent is to maximize humiliation, and maybe get an apology, but from the victim's perspective, one that is objectively reasonable, the man has unintentionaly conveyed an ominous warning that she may be in serious danger and there is no place to hide.

If that's not enough, suppose the facts get worse. Ready for his big face-to-face moment, the man eventually relays a final anonymous message: "We need to talk." He then drives to the victim's house, parks on the street out front, and sits in his car while waiting for the victim to come home. Ten minutes later, he spots the victim's car approaching fron the rear, and, at the same time, the victim takes note of an unfamiliar car parked in the street ahead. The man begins to open the car door, and the victim deduces that the person must be the anonymous harasser, ready to pounce. In a panic, the victim turns the car around and begins driving toward the nearest police station. The man starts his car and follows close behind, anxiously seeking the final confrontation of his fantasy. The victim apprehends that a chase has begun, and the panic grows. Distracted and having accelerated too quickly trying to catch up to the victim, the man loses control of his car after the victim abruptly brakes to make a left turn. Through her side

window

window in the middle of the turn, the victim can see the man's vehicle barreling straight toward her at speed, seemingly (to her) intending an inevitable direct impact with her car. If she did not previously fear serious bodily injury or death from the conduct up to now, she certainly does at that moment. The cars in fact collide, and the victim is mortally injured and dies at the hospital shortly thereafter.

The facts of this hypothetical case satisfy every element of Travel Stalking and Cyberstalking as charged in count 14. The man traveled and used the internet with an intent to harass the victim. He engaged in a course of conduct that placed the victim in reasonable fear of death of bodily injury, certainly by the time the victim apprehended the car erash, if not far earlier. And as a result of that course of conduct, the victim died. Yet at no point did the man engage in conduct that, under the rule of <u>Borden</u>, constitutes the "use, attempted use, or threatened use of physical force against person or property of another." At worst, he acted recklessly as to the effect of his actions. Every threat the victim possibly perceived was the unintended result of the man's disregard of a risk, as was the victim's death.[1]

This hypothetical is plausible(not that that counts for anything under Taylor). To the contrary, "the hypothetical case illustrates the characteristic nuances of stalking, as well as the rationales for a broad definition of the crime." id Mangione, at *35-36. [2]

1 This plausible hypothetical was used by the court in Mangione. The court was able, via this example, to show that the Govern- had the ability to seek and obtain a conviction under §2261A that categorically fails to qualify as a crime of violence.

2 It should be noted that this court ultimately dismissed Mangione's §924(c) and §924(j) counts that were predicated on §2261A.

C. IN THE ALTERNATIVE, THE CHARGED STALKING OFFENSES CANNOT QUALIFY AS CRIMES OF VIOLENCE BECAUSE THEY CAN BE ACCOMPLISHED THROUGH THREATS OF SELF HARM

It should be noted that the reasonable fear element could be satisfied by a threat to inflict self-harm, which cannot satisfy the requirement for use of force "against the person or property of another." 18 U.S.C.§924(c)(3)(A)(emphasis added). See United States v. Plunkett, No. 04-CR-70083, 2024 WL 4173806, at *6-7(W.D. Va. Sept. 12, 2024).

A threat to use force against oneself or one's own property does not meet Section 924(c)'s force requirement. See Torres v. Lynch, 578 U.S. 452, 466(2016)(noting that 18 U.S.C.§16's identical crime of violence definition "would not reach arson in the many States defining that crime to include the destruction of one's own property"). Because the reasonable fear element covers placing the victim in fear of the death of an immediate family memeber, spouse, or intimate partner, a perpetrator who fits into one of those categories could satisfy the elements of the stalking offense by threatening self-harm.

Examples are not hard to come by. "For instance, a woman's estranged husband could travel in interstate commerce with the intent to harass her and , in the course of doing so, threaten to shoot himself if she refused to meet with him." Plunkett, 2024 WL 4173806, at *7. Similarly, a man's daughter could travel in interstate commerce with the intent to harass him and, in the course of doing so, threaten to take an overdose of pills if he did not agree to do something that she demanded of him." Id. Like the Defendant, Plunkett did not involve a death results element, but for the same reasons explained earlier, a death of the stalking

victim resulting from a threat of self-harm by the perpetrator would suffice. For example, a stalking victim may attempt to wrestle a gun from the suicidal spouse in the first Plunkett hypothetical, only for the gun to accidentally discharge and kill the victim.

Even though no death resulted from the defendant's course of conduct, the examples above are relevant because of the proximate cause inference being utilized within this very district. See United States v. Seetaram, U.S. Dist. LEXIS 9933(S.D. Fl. Jan. 20, 2026)("So, as we see it, 'the death-resulting language,' combined with the statute's specific reference to the victim, demands a direct causal between the cyberstalking and the death, such that the victim of the cyberstalking must be the person who was proximately harmed by the offense-not just anyone who may have experienced some derivative after-effect of the crime.").

There is unequivocally no proximate(s) cause linking violence to Stalking/CyberStalking in the instant case like the case cited above. No death resulted(§2261(b)(1)), there was no permanent disfigurement or life threatening bodily injury (§2261(b)(2)),and there was no serious bodily injury to the victim (§2261(b)(3)). By the district's own current legal landscape, there is no proximate cause identifiable in the instant case. Without a direct/proximate cause to violence as a segue, then stalking categorically fails to qualify as a crime of violence under §924(c)(3)(A) for that reason too. And even if there was a [so-called] proximate cause, post-Taylor, §2261A would still fail to qualify as a crime of violence under the analysis' of the Plunkett, Mangione, and Elkins courts.

The Abarca court dealt with a death, which likely affected

that court's analysis in regards to the defendant's aruguments. As stated before, this Court adopted the report and recommendation in the Johnson case in its entirety, where the Magistrate Judge was in accordance with the Abarca Court's stance in regards to §2261A being categorized as a crime of violence. The Abarca court was clearly wrong, namely by utilizing the erroneous RPT analysis. And this court erred in adopting, especially since the death-results [so-called] proximate cause likely influenced that court's decision. That one-size-fits-all cookie cutter approach clearly prejudiced the defendant in Johnson, and the defendant would appreciate the Court not making a similar error.

## CONCLUSION

The Defendant has shown that both Sections 1952(a)(2) and 2261A fail to qualify as valid predicates for the §924(c) charged in count 16. The former is clearly unprosecutable, rendering it void; And the latter categorically fails to qualify as a crime of violence under the post-Taylor analysis(absent the RPT).

For the reasons stated herein, the Movant respectfully request that this Honorable Court grants the relief being sought, namely the dismissal of count 16 of the superseding indictment.

Respectfully Submitted,

August 27, 2026
Date

/s/ Vernon Green
Vernon Green, Pro Se
Reg. No. 25049-511
Miami FDC
P.O. Box 019120
Miami, Fl 33101

## CERTIFICATE OF SERVICE

I Vernon Green, do hereby certify under penalty of perjury (28 U.S.C. §1746) that I have served a true and correct copy of the following documents:

MOTION TO DISMISS COUNT 16 OF THE SUPERSEDING INDICTMENT PURSUANT TO FEDERAL RULES OF CRIMINAL PROCEDURE 12(b)

which, pursuant to Houston v. Lack, 487 US 266(1988), is deemed filed at the time it was delivered to prison authorities for forwarding to the court and service upon the parties to this litigation and/or their attorney(s) of record.

I have placed the material referenced above in a properly sealed envelope with first postage affixed and I addressed it to:

United States Attorney's Office
Abbie D. Waxman(AUSA)
Southern District of Florida
99 NE 4th Street
Miami, Fl 33132

And deposited said envelope via hand delivery to the Mail Room staff at the Federal Detention Center Miami on this 27th day of August, 2026.

Respectfully Submitted,

/s/ Vernon Green
Vernon Green #25049-511
FDC Miami/P.O. BOX 019120
Miami, Fl 33101

Vernon Green # 25049-511
FDC Miami
P. O. Box 019120
Miami, FL 33101

UNITED STATES OF AMERICA
FOREVER/USA

OF AMERICA
FOREVER/USA

United Sta[illegible]
Southern D[illegible]
Office of [illegible]
400 [illegible]
Miami, F[illegible]

(Legal Mail)


reen # 25049-511
019120
33101
ail)
UNITED STATES OF AMERICA
FOREVER/USA